THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NAVOS, a Washington nonprofit corporation, f/k/a HIGHLINE WEST SEATTLE MENTAL HEALTH, INC., <br><br> Plaintiff, <br><br> vs. <br><br> MENTAL HEALTH RISK RETENTION GROUP, a Vermont insurance company, <br><br> Defendant. | No. C11-262Z <br><br> ORDER |

THIS MATTER comes before the Court on a motion for partial summary judgment, docket no. 12, brought by plaintiff NAVOS, and an opposition and cross motion for summary judgment, docket no. 17, brought by defendant Mental Health Risk Retention Group. Having reviewed all papers filed in support of, and in opposition to, each motion, the Court enters the following Order.

ORDER - 1

**Discussion**

   **A. Summary Judgment Standard**

   The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 447 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party will be entitled to judgment if the evidence is not sufficient for a jury to return a verdict in favor of the opponent. *Id.* at 249.

   **B. The Duty to Defend Under Washington Law**

   In Washington, it is "well settled" that the duty to defend is "broader" than the duty to indemnify. *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52, 164 P.3d 454 (2007). The duty to defend arises based on "the insured's *potential* for liability and whether allegations in the complaint *could conceivably* impose liability on the insured." *Id.* at 60 (emphasis in original); *see also Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 760, 58 P.3d 276 (2002) (the duty to defend "arises at the time the action is first brought, and is based on the potential for liability"). An insurer has a duty to defend "when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." *Truck Ins.*, 147 Wn.2d at 760. As a result, an insurer is relieved of its duty to defend only if the claim alleged in the complaint is "clearly not covered by the policy." *Id.* Moreover, an ambiguous complaint is "liberally construed in favor of triggering the insurer's duty to defend." *Id.* If an insurer is "uncertain of its duty to

defend," it may defend under a reservation of rights and seek a declaratory judgment that it has no duty to defend. *Id.* "Although the insurer must bear the expense of defending the insured, by doing so under a reservation of rights and seeking a declaratory judgment, the insurer avoids breaching its duty to defend and incurring the potentially greater expense of defending itself from a claim of breach." *Id.*

### C. The Thompson Complaint

The relevant portions of the Thompson Complaint provide:

> On various occasions while Plaintiff Jane Doe Thompson was in the care of Defendant NAVOS and its staff, including Defendant John Doe [the security guard], Defendant John Doe engaged in offensive, humiliating and degrading acts directed toward Plaintiff Jane Doe Thompson, including but not limited to attempting to lure her into joining him in an unauthorized and non-permitted trip to a local fair by themselves without authority, fondling and "dry-humping" Plaintiff Jane Doe Thompson causing numerous emotional and physical damages to Plaintiff Jane Doe Thompson. At all times, Defendant John Doe was engaging in these outrageous, humiliating and degrading acts, he was fully aware of the unequal nature of the relationship between himself and Plaintiff Jane Doe Thompson.

Scott Decl. Exh. A-2 at ¶ 2.6.

### D. The Sheriff's Report

The Sheriff's Report contains information pertaining to the King County Sheriff's investigation into the alleged molestation of Jane Doe. Scott Decl. Exh. A-3 at 1. The Sheriff's Report states that Jane Doe told investigators that the security guard "bumped into her from behind" with "his private part" while he was teaching her to play pool "but that she didn't feel anything unusual about it." *Id.* at 8. In addition, the Sheriff's Report states that Jane Doe said that the security guard tickled her on her stomach and neck. *Id.* In the summary section of the Sheriff's Report, the investigating officer wrote that "during her forensic interview [Jane Doe] reported that [the security guard] tickled her and bumped her

from behind. They were both fully clothed when these things happened." *Id.* at 9. The conclusion section of the Sheriff's Report's states: "Case closed, unfounded." *Id.*

**E. CGL Coverage Part**

The CGL coverage part provides coverage as follows:

> We will pay those sums that the insured become legally obligated to pay as "damages" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking "damages" for "bodily injury" or "property damage" to which this insurance does not apply.

Todaro Decl. Exh. A at 8. The Sexual Misconduct Exclusion Endorsement ("SMEE") of the CGL coverage part states that "[t]his insurance does not apply to: 'Bodily injury' to any person arising out of 'sexual misconduct.'" *Id.* at 37. Sexual misconduct is defined as:

> [A]ny action or behavior, or any physical contact or touching, which is intended to lead to, or which culminates in any sexual act, by or against any client, patient, or any other person whose care, custody, treatment or supervision has been entrusted to the Named Insurer, whether committed by, caused by or contributed to by any insured or which is caused by or contributed to by the failure of any insured to:
> 1. properly train, hire, supervise, discipline or terminate any employee;
> 2. properly control, monitor or supervise the treatment of actions of any client, patient or other person whose care or custody has been entrusted to the Named Insured.

*Id.*

**F. Analysis of the Duty to Defend Under the CGL Coverage Part**

NAVOS's motion for summary judgment should be granted if the Thompson Complaint alleges conduct that could be covered under the CGL coverage part of the policy. The duty to defend arises based on "the insured's *potential* for liability and whether allegations in the complaint *could conceivably* impose liability on the insured." *Woo*, 161 Wn.2d at 60 (emphasis in original).

ORDER - 4

The causes of action for assault and battery are conceivably covered by the CGL coverage part.[1] The Thompson Complaint alleges that the security guard had physical contact with Jane Doe. Scott Decl. Exh. A-2 at ¶ 2.6. Based on this allegation, it is possible that a jury could determine that the security guard's conduct satisfied the elements of assault or battery while not constituting sexual misconduct as defined by the policy. For example, the jury could conclude that the security guard did bump Jane Doe from behind, that the contact was offensive or harmful, but that the contact was not sexually motivated.

Also, the causes of action for outrage and negligent infliction of emotional distress are conceivably covered by the CGL coverage part.[2] In addition to the facts that may support causes of action for assault and battery and give rise to coverage, the Thompson Complaint also alleges that the security guard attempted to lure Jane Doe on an unauthorized trip to the fair. Scott Decl. Exh. A-2 at ¶ 2.6. Based on this allegation, it is possible that a jury could determine that the security guard's conduct satisfied the elements of outrage or negligent infliction of emotional distress while not constituting sexual misconduct as defined by the policy. For example, the jury could conclude the security guard's attempt to lure Jane Doe was not sexually motivated, but that the conduct was outrageous because his role at the NAVOS clinic was, in part, to provide supervision for the children of patients.

---

[1] Under Washington law, assault requires that the actor cause the plaintiff apprehension of an imminent or harmful offensive contact. *Brower v. Ackerly*, 88 Wn. App. 87, 92, 943 P.2d 1141 (1997). Battery requires intentional conduct which results in harmful or offensive contact with the plaintiff. *Morinaga v. Vue*, 85 Wn. App. 822, 834, 935 P.2d 637 (1997).

[2] Under Washington law, outrage requires the plaintiff to prove three elements (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress. *Kloepfel v. Bokor*, 149 Wn.2d 192, 195, 66 P.3d 630 (2003). If a jury does not determine that the conduct was intentional or reckless, a plaintiff may recover for negligent infliction of emotional distress "if she proves negligence, that is, duty, breach of the standard of care, proximate cause, and damage, and proves the additional requirement of objective symptomatology." *Strong v. Terrell*, 147 Wn. App. 376, 387, 195 P.3d 977 (2008).

Moreover, MHRRG was required to investigate NAVOS's claim, and MHRRG considered the Sheriff's Report in determining whether the Thompson Complaint could be covered by the CGL coverage part. Generally, an insurer must determine its duty to defend a policy holder based only on the complaint. *See id.* at 761. However, there are exceptions to this rule; for example, "if it is not clear from the face of the complaint that the policy provides coverage, but coverage could exist, the insurer *must* investigate and give the insured the benefit of the doubt that the insurer has a duty to defend." Woo, 161 Wn.2d at 53. (emphasis in original). It is not clear from the face of the Thompson Complaint whether the policy provides coverage. As a result, MHRRG was required to investigate the claim and consider the Sheriff's report in determining whether it had a duty to defend NAVOS. Jane Doe's statements in the Sheriff's Report that the security guard "tickled" and "bumped into her from behind" makes it more likely that coverage could exist under the CGL coverage. *See* Scott Decl. Exh A-3 at 8.

Even if the facts in the Thompson Complaint and the Sheriff's Report give rise to conduct that could be covered, MHRRG argues the SMEE applies as a matter of law. MHRRG relies on *American Econ. Ins. Co. v. Estate of Wilker*, 96 Wn. App. 87, 93-94, 977 P.2d 677 (1999) and *Grange Ins. Ass'n v. Authier*, 45 Wn. App. 383, 725 P.2d 642 (1986) for the proposition that it can be inferred as a matter of law that the security's guard's actions were intended to lead to a sexual act. Neither of these cases support this conclusion.

In *Wilker,* Mr. Joseph Wilker allegedly sexually abused three girls that lived in his neighborhood. 96 Wn. App. at 88. After his suicide, representatives for the girls sued Wilker's estate and his homeowner's insurer for negligent infliction of emotional distress. *Id.* The insurance company argued that it had no duty to defend the Wilker estate because Mr.

ORDER - 6

Wilker's intent to injure the three girls could be inferred from his actions. *Id.* The Washington Court of Appeals agreed, holding that "an intent to harm can be inferred when a child witnesses the sexual abuse of another child." *Id.* at 92. In *Wilker*, the court concluded that the intent to harm a child can be inferred from the sexual abuse of a child. *See id.* In contrast, in this case, MHRRG is asking the Court infer as a matter of law that the security guard's actions were intended to lead to a sexual act. The Court declines to infer this result as a matter of law.

In *Authier*, Mr. Barry Authier pleaded guilty to a charge of taking indecent liberties with a minor. 45 Wn. App. at 384. In a subsequent civil suit, the parents of the victim sued Mr. Authier for assault. *Id.* Authier's insurance company accepted the defense, with a reservation of rights pending determination of coverage under the policy. *Id.* The insurance company then moved for declaratory relief arguing that it could deny coverage because Mr. Authier's actions were intentional rather than accidental. *Id.* The court inferred that "because of the nature of the indecent liberties" Mr. Authier intended to inflict injury on the child as a matter of law. *Id.* at 386. However, in *Authier*, Mr. Authier had already pled guilty to taking indecent liberties with a minor victim in criminal court. Moreover, in *Authier*, the court focuses on an insurer's duty to indemnify, rather than the duty to defend. In fact, the insurance company defended Mr. Authier with a full reservation of rights. *See id.* at 384.

In the CGL coverage part, the term "sexual act" is an ambiguous term. "Undefined terms in an insurance contract must be given their plain, ordinary, and popular meaning." *Panorama Village Condominium Owners Ass'n. v. Allstate Ins. Co.*, 144 Wn.2d 130, 139, 26 P.3d 910 (2001). When terms are ambiguous, the meaning and construction most favorable to the insured must be applied. *Id.* at 141. In this case the term "sexual act" is ambiguous and

must be construed against MHRRG and in favor of NAVOS. Thus, the Court cannot say as a matter of law that the SMEE applies in this case to exclude coverage.

### G. PL Coverage Part

#### 1. The PL coverage part (independent of any endorsement)

The relevant provisions of NAVOS's PL coverage states:

> We will pay those sums that the insured becomes legally obligated to pay as **DAMAGES** because of injury as a result of a **WRONGFUL ACT**.
>
> We will have the right and duty to select counsel and to defend any **SUIT** seeking **DAMAGES**.

Todaro Decl. Exh. A at 60. The term "wrongful acts" is defined in the PL coverage part as follows:

> **WRONGFUL ACT(S)** means any act, error or omission in the furnishing of professional healthcare services. It includes the furnishing of food, beverages, medications or appliances in connection with those services.

<u>Id.</u> at 65. Unlike the CGL coverage part, the PL coverage part does not contain an exclusion for instances of sexual misconduct.

### H. Analysis of the Duty to Defend Under the PL Coverage Part

The Thompson Complaint alleges conduct that could also be covered under the PL coverage part of the policy. The duty to defend arises based on "the insured's *potential* for liability and whether allegations in the complaint *could conceivably* impose liability on the insured." <u>Woo</u>, 161 Wn.2d at 60 (emphasis in original). NAVOS provides mental health services to low-income individuals. Scott Decl. at ¶ 1. In addition, NAVOS maintains a recreation room for the children of patients. <u>Id.</u> The availability of this recreation space, at least in this instance, was a necessary component of NAVOS providing Ms. Tomey with mental health services on days when her daughter was not in school. <u>See</u> Scott Decl. Exh.

A-2 at 2. As a result, the Thompson Complaint refers to conduct that could be considered to have been an "act, error or omission in the furnishing of professional health care services," and thus could be covered under the PL coverage part.

MHRRG relies on *Washington Ins. Guar. Ass'n v. Hicks*, 49 Wn. App. 623, 744 P.2d 625 (1987) and *Standard Fire Ins. Co. v. Blakeslee*, 54 Wn. App. 1, 771 P.2d 1172 (1989) for the proposition that that the security guard's action of watching a child in the recreation room was not the "furnishing of professional healthcare services" because Jane Doe was not a patient of NAVOS. Neither the *Hicks* nor the *Blakeslee* require this conclusion. Both *Hicks* and *Blakeslee* deal with the issue of the duty to indemnify rather than the duty to defend. In addition, in both these cases the insurer provided a defense under reservation and then sought a declaratory judgment.

I. **The Sexual Misconduct Limitation Endorsement of the PL coverage part**

The Sexual Misconduct Limitation Endorsement ("SMLE") states that it "modifies [the] insurance provided under" the PL coverage part. Todaro Decl. Exh. A at 75. The SMLE endorsement states:

> In consideration of the premium charged, the Coverage Part is amended as follows:
>
> 1. The **PROFESSIONAL LIABILITY COVERAGE PART** is extended to provide limited coverage under **SECTION I-COVERAGE** when there is an allegation of **SEXUAL MISCONDUCT**. A **CLAIM** or **SUIT** involving any allegation of **SEXUAL MISCONDUCT** is not subject to the Each **CLAIM** limit of insurance of the Aggregate limit of insurance shown on the Professional Liability Coverage Part Supplemental Declarations. A **CLAIM** or **SUIT** involving any allegation of **SEXUAL MISCONDUCT** is, instead, subject to the reduced limits of insurance set forth in paragraph 2 of this endorsement.
>
> . . . .
>
> 3. In the event **SEXUAL MISCONDUCT** is alleged at any time, either in a complaint, during discovery, at trial or otherwise, any and all causes of action alleged

and arising out of the same, related, continuing or repeated acts of **SEXUAL MISCONDUCT**, whether or not in the course of professional treatment and/or relationships, shall be subject to the same Each **CLAIM** sublimit of insurance set forth in this endorsement and shall be subject to all other provisions of this endorsement.

*Id.* The SMLE defines sexual misconduct as follows:

**SEXUAL MISCONDUCT** means any action or behavior, or any physical contact or touching, which is intended to lead to, or which culminates in any sexual act, by or against any client, patient, or any other person whose care, custody, treatment or supervision has been entrusted to the Named Insurer, whether committed by, caused by or contributed to by any insured or which is caused by or contributed to by the failure of any insured to:

    1. properly train, hire, supervise, discipline or terminate any employee;
    2. properly control, monitor or supervise the treatment of actions of any client, patient or other person whose care or custody has been entrusted to the Named Insured.

*Id.* at 76.

### J. Analysis of the Duty to Defend Under the SMLE of the PL coverage part

The SMLE provides additional coverage for allegations of sexual misconduct that would not be covered under the PL coverage part. The SMLE states that the PL coverage part is "extended to provide limited coverage under **SECTION I-COVERAGE** when there is an allegation of **SEXUAL MISCONDUCT**." *Id.* at 75. The word "extended" signifies that the SMLE provides the insured with additional protection for claims of sexual misconduct. *See id.* As a result, the SMLE could apply to some or all of the allegations in the Thompson Complaint.`

### K. Contract Damages and Attorneys' Fees

MHRRG breached its insurance contract with NAVOS when it refused to defend NAVOS in the Thompson Lawsuit; as a result, the Court concludes that MHRRG must reimburse NAVOS for the expenses it paid to its defense counsel in the Thompson lawsuit. The general rule regarding damages for an insurer's breach of contract is that the "insured

ORDER - 10

must be put in as good a position as he or she would have been had the contract not been breached." *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 561, 951 P.2d 1124 (1998). In the failure to defend context, recoverable damages include the amount of expenses, including reasonable attorney fees the insured incurred defending the underlying action. *Id.*; *see also Olympic Steamship Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 53, 811 P.2d 673 (1991) ("[a]n insured who is compelled to assume the burden of legal action to obtain the benefit of its insurance contract is entitled to attorney fees"). Because of MHRRG's refusal to defend, NAVOS paid the Karr Tuttle law firm to serve as defense counsel. In addition, NAVOS hired another firm in connection with this motion. In this case, reimbursement for attorneys' fees would put NAVOS in "as good a position as [it] would have been had the contract not been breached." *See Kirk*, 134 Wn.2d at 561. In addition, NAVOS was "compelled to assume the burden on legal action to obtain the benefit of its insurance contract" and should be reimbursed accordingly. *See Olympic Steamship*, 117 Wn.2d at 53.

**L. Conclusions**

MHRRG had a duty to defend NAVOS because the Thompson Complaint alleges facts that could conceivably impose liability on MHRRG.

The CGL coverage part could conceivably apply to the causes of action for assault, battery, negligent infliction of emotional distress, and outrage. In addition, the CGL coverage part might apply because it cannot be said as a matter of law that the security guard intended his actions to lead to a sexual act.

The PL coverage part could conceivably apply to some or all of the acts in the Thompson Complaint. In addition, the SMLE extents the potential for coverage under the PL

coverage part where sexual misconduct is alleged and might apply to some or all of the acts in the Thompson Complaint.

As a result, the Court GRANTS Plaintiff's motion for partial summary judgment and denies Defendant's motion for summary judgment.

Being now fully advised, IT IS HEREBY ORDERED as follows:

(1) The Court finds that the defendant has breached its insurance contract with the plaintiff by refusing to defend plaintiff in the matter of *Thompson, et al. v. Highline West Seattle Mental Heath*, King County Superior Court Case No. 10-2-30956-0 SEA.

(2) The plaintiff is awarded its out-of-pocket costs, together with pre-judgment interest, and its fees in pursuing its breach of contract claim. Plaintiff is directed to submit a motion for fees and costs within thirty court days of the date of this Order containing the following: (i) a complete accounting of the fees and costs it has paid to date in defense of the *Thompson* matter, (ii) an accounting as to any claim for prejudgment interest on those fees and costs, and (iii) a statement of the fees and costs it has incurred in connection with the breach of contract claim asserted in this case.

(3) The defendant is directed to promptly reimburse plaintiff for all reasonable fees and costs it incurs in the *Thompson* matter from the date of this Order, unless otherwise directed by this Court.

IT IS SO ORDERED.

DATED this 6th day of July, 2011.

                                                                             /s/ Thomas S. Zilly
                                                      Thomas S. Zilly
                                                      United States District Judge